IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JESSICA JOHNSON,

Plaintiff,

v.

CORPORAL CHASE ROSS,
TILLAMOOK COUNTY,

Defendants.

Case No. 3:25-cv-00181-AP

**OPINION AND ORDER**

POTTER, United States Magistrate Judge:

Plaintiff Jessica Johnson filed her Complaint against Defendants Chase Ross and Tillamook County (collectively Defendants) in February 2025, alleging violations of her federal civil rights as well as various state causes of action stemming from her arrest on August 2, 2024.[1] ECF No. 1. Defendants moved for summary judgment on all of Plaintiff's claims. Defs.' Mot. Summ. J. (Defs.' Mot.), ECF No. 42. Plaintiff also moved for summary judgment. Pl.'s Mot. Summ. J. (Pl.'s Mot.), ECF No. 54. For the reasons discussed below, Defendants' Motion is granted in part and denied in part, and Plaintiff's Motion is denied.

[1] Plaintiff originally included Officer Neubauer, Officer Saddler, and Tillamook City Police Department as Defendants in this action. These Defendants were dismissed following a joint stipulation. ECF No. 13. Additionally, the parties agreed that Tillamook County, rather than Tillamook County Sheriff's Office, was the proper Defendant. ECF No. 17.

**FACTUAL BACKGROUND**

Plaintiff rented and was in possession of a U-Haul truck on August 2, 2024. Compl. ¶ 7, ECF No. 1. Around midday, a local mechanic claiming to be an agent from U-Haul, Alex Cole (Cole) arrived at Plaintiff's residence, purportedly to collect the truck. Pl.'s Resp. to Defs.' Mot. (Pl.'s Resp.) 5, ECF No. 56. Mr. Cole claimed that he had received notice from U-Haul that Plaintiff's credit card had been declined and the truck was now overdue. *Id.* Plaintiff disputed Cole's claims and attempted to provide proof that she had paid for the vehicle and confirmed the payment with the U-Haul personnel over the telephone. *Id.* At some point during the dispute, law enforcement was dispatched to Plaintiff's residence. Declaration of Chase Ross (Ross Decl.) ¶ 12, Ex. 2, ECF No. 44. Prior to law enforcement arriving, a Subaru was placed in front of the U-Haul to prevent its being taken by Mr. Cole. *Id.* at ¶ 15.

Upon arrival, Corporal Ross spoke with Mr. Cole, who "informed [him] that he owned the U-Haul truck currently parked, and being blocked by another vehicle . . . and that it was currently three (3) days past its contracted return date." *Id.* at ¶ 14. Mr. Cole then showed Corporal Ross what appeared to be a rental receipt for the truck in the name of Plaintiff's deceased father. *Id.* Plaintiff denied Mr. Cole's assertions when questioned by Corporal Ross and insisted that the truck was lawfully rented by her, using her credit card, and that the rental contract had been extended through the end of that day. Pl.'s Resp. 5. Plaintiff attempted to show Defendant the agreement on her phone, but, according to Defendant, "the only document she was able to show [] was a 'Terms & Conditions' statement which did not provide any evidence of her payments or association with the U-Haul truck." Ross Decl. ¶ 18.

Corporal Ross informed Plaintiff that she had no proof she was in lawful possession of the truck, and that she needed to "let Mr. Cole take possession of it." *Id.* at ¶ 19. Plaintiff argued

with Corporal Ross, reiterating that the truck had been lawfully rented and was full of her deceased father's belongings. Pl.'s Resp. 5–6. Plaintiff and Defendant continued with the back-and-forth for a few minutes, until Defendant attempted to cut off the conversation by telling Plaintiff she would need to let Mr. Cole have the truck, or she would be arrested. Ross Decl. ¶ 19.

Plaintiff explained that she was not able to move the Subaru blocking the truck as it belonged to her son. Pl.'s Resp. 6. Defendant then told Plaintiff she either needed to let Mr. Cole have the truck, or she would be "arrested for interfering." Ross Decl. ¶ 11, Ex. 3 Axon_Body_3_Video_2024-08-02_1237_X60A60799 (BODYCAM 1) 12:50. Defendant then reiterated that Plaintiff's only options were to move the vehicle blocking the moving truck and let Mr. Cole take the truck or she was going to jail. BODYCAM 1 12:50. Plaintiff responded saying "fuck it take me to jail then because I'm not going to do this shit . . . They're not gonna take my dead dad's shit, period." *Id.*

Corporal Ross then arrested Plaintiff, first pinning her against the U-Haul, then throwing her to the ground and face first into the gravel. Pl.'s Resp. 6. Plaintiff received injuries as a result of this contact, including "abrasions, bruising, and swelling" around her right eye, cheek, jawline, and shoulder. *Id.* After Plaintiff was placed in Corporal Ross's police car, he directed Plaintiff's friend, Devin Hyde, to let Mr. Cole take the U-Haul and explained to Mr. Hyde that Plaintiff had been arrested for "interfering and UUMV." BODYCAM 1 12:53. Corporal Ross asked who owned the Subaru and, upon learning that Plaintiff's son owned the vehicle, instructed Mr. Hyde to have it moved or else it would be towed. BODYCAM 1 16:35–16:51.

Plaintiff was taken to the hospital to treat her injuries, after which she was taken to the Tillamook County Jail. Ross Decl. ¶ 30. Plaintiff remained in jail for four days. Pl.'s Resp. 6.

During Plaintiff's detention, she missed her father's funeral and her house was demolished. Pl.'s Mot. 2–3. Plaintiff was later charged with disorderly conduct and resisting arrest. Pl.'s Resp. 6. On January 8, 2025, Plaintiff was acquitted of the disorderly conduct charge; a mistrial was declared on the resisting arrest charge because of a hung jury. *Id.* The State moved to dismiss the case against Plaintiff, which the Tillamook County Circuit Court granted on January 13, 2025. Pl.'s Resp., Ex. G, ECF No. 56-5.

Plaintiff filed her Complaint against Corporal Ross and Tillamook County on February 3, 2025. ECF No. 1. In her Complaint, Plaintiff asserted Fourth Amendment claims against Corporal Ross and Tillamook County arising under 42 U.S.C. § 1983, including excessive force and unlawful arrest. Compl. ¶¶ 16–19. Plaintiff also alleged claims under the Fourteenth Amendment, including violations of her rights to due process and equal protection. Compl. ¶¶ 20–21. She alleged both federal and state-law claims for malicious prosecution and state-law claims for defamation and intentional infliction of emotional distress (IIED). Compl. ¶¶ 22–29.

Plaintiff filed her Complaint pro se and remained without representation through most of the litigation, including up to when she and Defendants cross-moved for summary judgment. On January 12, 2026, Plaintiff notified the Court that she had secured legal representation. ECF No. 60. That same day, Plaintiff, through her attorney, filed a brief in support of her motion for summary judgment. Plaintiff's Reply in Support of Motion (Pl.'s Reply), ECF No. 61. Plaintiff, through her attorney, raised arguments in support of her motion that had not been articulated, including case law calling into question the legality of Corporal Ross's intervention in the U-Haul rental dispute. *See generally* Pl.'s Reply. Defendants objected to Plaintiff's newly advanced arguments at oral argument.

The Court heard oral argument on the pending motions for summary judgment on March 5, 2026. ECF No. 68. The Court then ordered both parties to file supplemental briefs on issues raised during the hearing, including whether Plaintiff had properly alleged a claim for municipal liability and whether new arguments alleged in Plaintiff's reply brief were appropriate for the Court to consider. ECF No. 69. At the Court's direction, both parties filed supplemental briefs and declarations addressing the issues raised in oral argument. ECF Nos. 70, 71, 72, 73. The Court considers the parties' respective Motions for Summary Judgment to be fully briefed.

## STANDARDS

### I. Summary Judgment

Summary judgment is warranted when, based on the pleadings, depositions, and other interrogatories and admissions on file, together with the affidavits, if any, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case; disputes about irrelevant or unnecessary facts do not preclude summary judgment. *Id.* And the materiality of the fact is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Whether there is a genuine issue of material fact is often a close question. *Id.* The moving party thus bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party cannot

merely rely on allegations in the pleadings or claims that it will discredit the moving party's evidence at trial. *Id.* But neither party need prove any fact conclusively at this stage. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party and when evidence conflicts, the court "must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.* at 631. At bottom, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*

In cases where opposing parties have filed cross-motions for summary judgment, "the Court 'evaluates each motion independently, giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Dent v. Sessions*, 243 F. Supp. 3d 1062, 1069 (D. Ariz. 2017), *aff'd,* 900 F.3d 1075 (9th Cir. 2018) (cleaned up) (quoting *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016); *see also ACLU v. City of Las Vegas,* 333 F.3d 1092, 1097 (9th Cir. 2003) (same). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Dent*, 243 F. Supp. 3d at 1069 (quoting *Celotex Corp.*, 477 U.S. at 323).

## II. Qualified Immunity

An officer is entitled to qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir. 2002). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Saucier v.*

*Katz*, 533 U.S. 194, 200 (2001)). As such, courts must resolve "immunity questions at the earliest possible stage in [the] litigation." *Id.* (quoting *Pearson*, 555 U.S. at 232).

To determine whether qualified immunity applies, a court must examine: "(1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Id.* (citing *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)). These prongs can be addressed in either order. *Fuhr v. City of Seattle*, 175 F.4th 1081, 1085 (9th Cir. 2026).

The first prong of the analysis turns on whether there was a violation of Plaintiff's constitutional rights. This requires an analysis of the facts. *Id.* And when analyzing this question, the facts are taken in the light most favorable to Plaintiff. *See Thomas v. Dillard*, 818 F.3d 864, 875 (9th Cir. 2016) (emphasizing that for purposes of evaluating qualified immunity for a *Terry* stop the facts are viewed in the light most favorable to Plaintiff).

The next step is determining whether the right was clearly established at the time of the stop. *Fuhr*, 175 F.4th at 1085. "To determine whether [an officer] violated clearly established law, we look to cases relevant to the situation [the officer] confronted, mindful that there need not be a case directly on point." *A. K. H. by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016) (internal quotation marks and citation omitted). And while a representative case need not be directly on point, this Court must look for precedent sufficiently analogous to the facts here, where "an officer acting under similar circumstances was held to have violated the Constitution." *Fuhr*, 175 F.4th at 1085 (quoting *Zorn v. Linton*, 607 U.S. 568, 572 (2026)) (cleaned up). The Ninth Circuit has cautioned that a "clearly established right

'should not be defined at a high level of generality'" but instead must be "particularized to the facts of the case." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)) (cleaned up).

**DISCUSSION**

Defendants argue that summary judgment is appropriate on all of Plaintiff's claims against Tillamook County and Corporal Ross because "there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law." Defs.' Mot. 1. Defendants also argue that Corporal Ross is entitled to qualified immunity on all federal claims. Defs.' Mot. 1. With respect to Defendant Tillamook County, Defendants also raise a procedural argument, that Plaintiff failed to state a § 1983 claim under a *Monell* theory of municipal liability. Defs.' Resp. to Pl.'s Mot. Summ. J. 2, ECF No. 59. With respect to the state law claims brought under supplemental jurisdiction, Defendants argue that Corporal Ross is an improper party for these claims, and that Plaintiff's state law tort claims should be dismissed with prejudice as a matter of law. Defs.' Mot. 32–37.

Plaintiff argues that the Court should grant summary judgment in her favor on all claims against both Defendants. Pl.'s Mot. 22–23. Plaintiff asks the Court to enter judgment on liability for each claim and "set proceedings to determine damages as necessary, along with awarding fees and costs." *Id.* at 23.

**I. Plaintiff's Section 1983 *Monell* Claim Against Defendant Tillamook County**

Plaintiff brings her constitutional claims against Defendant Tillamook County under 42 U.S.C. § 1983, which provides a "federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To bring a claim under § 1983, a plaintiff must allege both the "deprivation of a right secured by the federal Constitution or statutory law," and that the "deprivation was committed by

a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Cities and counties are considered persons under § 1983; these claims are typically referred to as *Monell* claims. *Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978).

As an initial matter, Defendants contend that Plaintiff failed to adequately plead her *Monell* claims in her Complaint. And Defendants object to any amendment of the pleadings at this stage. But the Ninth Circuit has made clear that leave to amend should be freely given, particularly for pro se litigants. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). The Court will, therefore, analyze the merits of Plaintiff's *Monell* claims. \

To bring a claim for municipal liability, a plaintiff must plead facts alleging (1) she had a constitutional right of which she was deprived; (2) the municipality had a policy or custom; (3) the policy or custom amounts to deliberate indifference to her constitutional right; and (4) the policy or custom is the "moving force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)); *Monell,* 436 U.S. at 694 (only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [is] the government as an entity is responsible under § 1983").

The custom or policy in question "must be a 'deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting *Pembaur v. City of Cincinnati*, 475 U.S.

469, 483 (1986)). The responsibility lies with the plaintiff to "show that the municipal action was taken with the requisite degree of culpability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). A plaintiff must further "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* A reviewing court must "adhere to [the] rigorous requirements of culpability and causation" lest "municipal liability collapse[] into *respondeat superior* liability." *Id.* at 415.

Plaintiff alleges *Monell* liability based on Tillamook County's "failure to train, supervise and discipline officers on use of force, cross gender searches, report integrity and property procedures." Pl.'s Mot. 21. Plaintiff further argues that "[m]ultiple civilian complaints and Plaintiffs [sic] own personnel complaint were ignored and inadequately addressed by supervisors such as Michelle Raymond, demonstrating deliberate indifference and ratification of misconduct." *Id.* In Plaintiff's reply, she also alleges a lack of training for civil disputes and vehicle repossession. Pl.'s Reply 29.

Ultimately, all of Plaintiff's theory of *Monell* liability center around a "failure to train," a species of municipal liability that courts have repeatedly encountered. "Failure to train" claims "may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* at 1153–54 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

A single incident is generally insufficient to establish *Monell* liability under a failure to train theory. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, there is a narrow exception to this general rule. The Supreme Court identified "the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations" in cases where a single incident is so egregious that it reflects a policymakers' decision of "deliberate indifference" of a specific constitutional or statutory right. *Brown*, 520 U.S. at 409 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)).

Plaintiff has not provided evidence of a pattern of incidents beyond her own encounter with Corporal Ross to support her claim for *Monell* liability. Plaintiff asks the Court to deny summary judgment in favor of the Defendants because "a jury could reasonably infer" from Corporal Ross's conduct on August 2, 2024, that this conduct reflected Tillamook County "standard operating procedure," or that the County was "deliberately indifferent towards adequately training officers on this policy." Pl.'s Reply 29. Except "an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022). Plaintiff's reference to Corporal Ross's training transcript is similarly insufficient to establish a County's adopted posture of deliberate indifference because "evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy." Pl.'s Reply 29; *Blankenhorn,* 485 F.3d at 484.

Plaintiff also argues that "the BWC footage clearly indicates Corporal Ross's deliberate indifference to Ninth Circuit and Oregon law." Pl.'s Reply 30. Here, Plaintiff is conflating *Corporal Ross's* alleged deliberate indifference with the *County's.* To establish a *Monell* claim, Plaintiff must prove the latter. Corporal Ross's personal "deliberate indifference" would only be relevant under a *Monell* theory of liability if Plaintiff offered evidence that Corporal Ross was a

"policy making official" for Tillamook County, or that his deliberate indifference was reflected in official policy. *Connick*, 563 U.S. at 61. To the contrary, Plaintiff has offered evidence that Corporal Ross's "actions on August 2, 2024, were inconsistent with" official Tillamook County policy. First Johnson Decl. 26, ECF No. 54; Third Johnson Decl. ECF No. 71-1, Ex. A.

Plaintiff has not offered evidence that the County was deliberately indifferent to her rights. Plaintiff also has not offered evidence that the County ratified Corporal Ross's behavior. The fact that the County did not offer evidence of their investigation into Corporal Ross's conduct is not proof that his conduct was ratified. "The policymaker must have knowledge of the constitutional violation and must make a 'conscious, affirmative choice' to ratify the conduct at issue." *Garcia v. City of Imperial*, No. 3:08-CV-02357-BTM-PCL, 2010 WL 3911457, at *1 (S.D. Cal. Oct. 4, 2010) (citing *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)).

Because Plaintiff has not presented specific facts that would allow a reasonable jury to find that Tillamook County had an official policy that violated or was deliberately indifferent towards Plaintiff's rights, the Court finds that Defendants are entitled to summary judgment on Plaintiff's *Monell* claim against Defendant Tillamook County.

## II. Plaintiff's Section 1983 Fourth Amendment Claims Against Defendant Corporal Ross

### *A. Unlawful Arrest Claim*

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097–98 (9th Cir. 2013) (quoting *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 918 (9th Cir.2012) (en banc) (citation modified). To determine whether Corporal Ross had probable cause to arrest Plaintiff, the court considers "whether at that moment the facts and circumstances within [the Officers'] knowledge ... were sufficient to warrant a prudent man

in believing that the petitioner had committed or was committing an offense." *Edgerly v. City & Cnty. Of San Francisco,* 599 F.3d 946, 953 (9th Cir. 2010) (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). In assessing whether probable cause existed at the time of the arrest, courts examine "the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Defendants argue that Plaintiff's claim should be dismissed because probable cause existed to arrest Plaintiff for three crimes: Interfering with a Peace Officer (ORS 162.247), Disorderly Conduct in the Second Degree (ORS 166.025), and Resisting Arrest (ORS 162.315). Defs.' Mot. 19–21.

In part, Defendants contend Plaintiff's "behavior after [Corporal Ross] attempted to arrest her for Interfering with a Peace Officer created probable cause for the additional crimes of Disorderly Conduct in the Second Degree under ORS 166.025 and Resisting Arrest under ORS 162.315." Defs.' Mot. 20. But, as Defendants acknowledge, this behavior occurred *after* Corporal Ross began to arrest Plaintiff. These facts cannot form the basis of probable cause for Corporal Ross's decision to arrest Plaintiff.

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer **at the time of the arrest**." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (emphasis added)); *see also Blankenhorn*, 485 F.3d at 472 ("If there was no probable cause to arrest [plaintiff] for trespassing in the first place, it makes no difference for [evaluating wrongful arrest claim] if he resisted arrest."). At the time of the arrest, the potential violations were interference with a police officer and disorderly conduct.

For the purposes of § 1983 litigation, whether probable cause existed at the time of a seizure is ordinarily a question for the jury. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). Thus, summary judgment is only appropriate if a court finds that "no reasonable jury could find that the officers did or did not have probable cause to arrest." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984). Courts can only resolve this question at summary judgment if there is no genuine dispute of material fact, viewing all facts in the light most favorable to the nonmoving party. When there is video footage, as there is here, the trial court should view the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). However, "[t]he mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018).

**1. Interference With a Peace Officer**

Defendants first argue that summary judgment is appropriate for Plaintiff's unlawful arrest claim because Corporal Ross had probable cause to arrest Plaintiff for interfering with a peace officer under ORS 162.247. Defs. Mot. 19–20; Ross Decl. ¶ 20.

Interfering with a peace officer occurs when someone "knowing that another person is a peace officer or a parole and probation officer . . . intentionally or knowingly acts in a manner that prevents, or attempts to prevent, the peace officer" from "performing the lawful duties of the officer with regard to another person or a criminal investigation." ORS 162.247. The term "prevent" means "a physical action taken that keeps something from happening," while "attempts to prevent" encompasses "physical actions that do not completely stop officers from performing their lawful duties but constitute a substantial step towards that end." ORS 162.247(1)(a); *State v. Scheirman*, 295 Or. App. 238, 244–45, 433 P.3d 751, 765 (2018).

Corporal Ross's declaration cites as a basis for the arrest that Plaintiff was "knowingly refusing to comply with [lawful] orders." Ross Decl. ¶ 20(F). This constituted interference with a peace officer for many years. However, in 2021, the Oregon legislature amended ORS 162.247 and narrowed the scope of this statute. H.B. 3164, 81st Leg. Assem., Reg. Sess. § 1 (Or. 2021). After this law went into effect on June 11, 2021, a person could no longer be found in violation of ORS 162.247 merely for refusing to obey a lawful order by the peace officer or parole and probation officer. 2021 Or. Laws ch. 254 § 1.

Corporal Ross was faced with a dispute over the rightful possession of a U-Haul. Immediately prior to the arrest, according to Defendants, Corporal Ross "had information from a witness, who also provided documentation substantiating the information that Plaintiff was in possession of a U-Haul that was not hers and that was overdue and had an outstanding balance." Defs.' Mot. 20. "Plaintiff refused to return the truck to its rightful owner and thus interefer[ed] with his lawful duties as a police officer." *Id.* Plaintiff also refused "to move or direct the Subaru to be moved so that it was no longer blocking both the U-Haul and the lane of travel." *Id.*; *see also* Ross Decl. ¶ 20.

Those facts, though, were disputed by Plaintiff at the scene. Plaintiff repeatedly expressed that she had a right to possess the vehicle. Plaintiff said that she had paid for the vehicle for the period in which she still was in possession. When Plaintiff offered to show Corporal Ross proof of this payment, Corporal Ross declined to see it, stating simply, "because it's their vehicle." BODYCAM 11:25. When Plaintiff offered to present a signed contract, Corporal Ross stated, "we're past the whole signed contract thing." BODYCAM 11:36.

Despite a dispute between the parties regarding right to possession, Corporal Ross declined Plaintiff's request to inquire further about her rights to possession. He made the

decision that she was not entitled to possession based on his interaction with Mr. Cole and ordered her to relinquish the U-Haul.

A reasonable officer faced with the same scenario could conclude that incident was a civil one or at least a potential civil dispute that warranted additional investigation before ordering one party to return the property. Indeed, the Tillamook County Sheriff's Office, Policy Manual cautions officers that "legal possession of vehicles or personal property can be complex," and that "deputies should not take any enforcement action unless a crime is apparent." Third Johnson Decl., Ex. A., ECF No. 71-1, at 3 (DEF 00491). And an order to turn over property when there is not reasonable suspicion of a crime would not be lawful. *See State v. Kreis*, 365 Or. 659, 667–671 (2019) (holding that to be "lawful," the performance of the duties must be authorized by, and not contrary to, substantive law.).

A reasonable officer could also conclude that ordering someone to return a vehicle over their objection absent a court order would not be lawful. There is a clear process under Oregon to obtain lawful repossession of an automobile. ORS 83.670; ORS 72A.5210; s*ee also Westerman v. Oregon Auto. Credit Corp.*, 168 Or. 216, 122 P.2d 435 (1942) (establishing procedural rules for automobile repossession). That process had not been followed. But Corporal Ross still ordered Plaintiff to return the U-Haul or be subject to arrest. The order appeared designed to prevent Plaintiff from exercising her legal rights; that is not permitted. *See Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1991) (finding valid cause of action under § 1983 when a police officer "assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession."). And an unlawful order cannot support an interference charge. *Kreis*, 365 Or. at 670–71.

Even if it was a lawful order, the jury could conclude that Plaintiff's conduct did not "prevent[]" (or attempted to prevent) Corporal Ross from performing his duties. The act of "preventing" cannot be "through speech alone; physical conduct is required for a violation." *See Denucci v. Henningsen*, 248 Or. App. 59, 75, 273 P.3d 148, 159 (2012). Prior to being arrested, Plaintiff's conduct appeared to chiefly consist of speaking. The statute on its face does not apply "in situations in which the person is engaging in passive resistance." ORS 162.247(3) "'Passive resistance' refers to noncooperation with a peace officer that does not involve violence or other active conduct by the defendant." *State v. McNally*, 361 Or. 314, 316, 392 P.3d 721, 723 (2017).

Defendants are correct that Plaintiff did not comply with Corporal Ross's orders, but that is not sufficient to establish probable cause for interference. Whether Plaintiff was passively resisting or was affirmatively preventing Corporal Ross from performing his duties is appropriately a question for the jury. Even though the incident is on video, some of the facts—including, for example, the reasonableness of Corporal Ross's belief that Plaintiff controlled the vehicle blocking the U-Haul—depend on historical information and are in dispute. There is also a dispute about what reasonable inferences could be drawn from the events at the scene. Given this, there is a genuine issue of material fact as to whether Corporal Ross had probable cause to arrest Plaintiff for interference.

**2. Disorderly Conduct**

Defendants also argue that "Plaintiff was aware that the Subaru that was parked and blocking Fairview Lane was obstructing traffic because Corporal Ross made her aware of that" and that Plaintiff "continued to refuse to move the vehicle, intentionally causing a public inconvenience." Defs.' Mot. 21. Corporal Ross claims that based on his own "personal prior observations," the Subaru that was obstructing vehicular or pedestrian traffic was a vehicle that

"Plaintiff drove frequently and that she had possession and/or full access to the vehicle." Ross Decl. ¶ 15. Defendants argue that this gives rise to probable cause that Plaintiff was in violation of Oregon's disorderly conduct statute (ORS 166.025).

These facts, if true, could give rise to probable cause that Plaintiff violated the disorderly conduct statute. However, Plaintiff disputes these facts. Plaintiff states that her son was the person who parked the Subaru. Second Johnson Decl. ¶ 2. Plaintiff states further that she had "no control of" the vehicle. *Id.* at ¶ 10.

While Corporal Ross must form a determination about whether probable cause exists based on the facts presented to him, without the benefit of hindsight, the bodycam video shows that the complaining party, Mr. Cole, told Corporal Ross that "another guy brought the vehicle in front of here and started letting air out of the tires." BODYCAM 01:43–01:48. This fact would suggest to a reasonable officer that they would not have probable cause to arrest Plaintiff for disorderly conduct. This could explain why the jury ultimately acquitted Plaintiff on the disorderly conduct charge. *See* Second Johnson Decl. ¶ ¶ 2–4.

Thus, the Court finds that with respect to the finding of probable cause for the disorderly conduct charge, there is a material dispute of fact that hinges in part on the credibility of the parties, and whether Corporal Ross was reasonably relying on his "personal prior observations" when he formed the conclusion that Plaintiff controlled the Subaru in the right-of-way. Ross Decl. ¶ 15. After evaluating the testimony and credibility of the parties, a jury could instead conclude, as Plaintiff argues, that Corporal Ross arrested her based on an "inadequate investigation" or personal animus, rather than probable cause. *Freece v. Clackamas County,* 442 F.Supp.2d 1080, 1090 (D. Or. 2006). Therefore, the Court denies Defendants' motion for summary judgment as to the wrongful arrest claim.

**3. Qualified Immunity Analysis for Unlawful Arrest Claim**

Police officers are entitled to qualified immunity and the dismissal of § 1983 claims against them unless they "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In considering the "clearly established prong" of the qualified immunity analysis, courts "must proceed based on Plaintiff's allegations rather than Defendants' framing of the evidence." *Gonzalez v. City of Phoenix*, 163 F.4th 1289, 1304 (9th Cir. 2026). The "clearly established requisite" does not mandate that an exemplary case be directly on point. *Id*.

However, the "existing precedent must place the lawfulness of the particular [action] beyond debate.'" *Id*. (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (citation modified). To determine whether qualified immunity applies, a court must examine: "(1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Id.* (citing *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)). These prongs can be addressed in either order. *Fuhr v. City of Seattle*, 175 F.4th 1081 (9th Cir. 2026).

"[E]ven in novel factual circumstances," the Supreme Court has recognized, "[o]fficials can still be on notice that their conduct violates established law." *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The key consideration for a qualified immunity analysis is whether the officer in question "had fair notice" that the conduct in question was unlawful. *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" so long as the unlawfulness in question is "apparent." *Hope v. Pelzer,* 536 U.S 730, 741 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In the context of an unlawful arrest, "the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is ***reasonably arguable*** that there was probable cause for arrest." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (citing *Jenkins v. City of New York,* 478 F.3d 76, 87 (2nd Cir. 2007) (emphasis in original).

Defendants argue that Corporal Ross is entitled to qualified immunity because at the time of the incident, there was not clearly established law to place Corporal Ross on notice that arresting Plaintiff was unconstitutional beyond debate. Defs.' Mot. 31. Defendants make this argument generally, stating that "based upon the binding and persuasive authority articulated supra, [Corporal Ross's] conduct fell squarely within the confines of the Fourth and Fourteenth Amendments" and that Defendants "[are] not aware of any controlling case law which demonstrates Corporal Ross's particular conduct was clearly established as unconstitutional." Defs.' Mot. 31–32.

But Defendants acknowledge and cite cases from the Ninth Circuit and Supreme Court all of which stand for the proposition that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 146, 152 (2004); Defs.' Mot. 18–19. Thus, "[i]t is well-established that an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Rosenbaum*, 663 F.3d at 1076 (quoting *Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir. 1988)). And, as discussed, Defendants have not established that there was probable cause to arrest Plaintiff.

Corporal Ross would still be entitled to qualified immunity if it was reasonably arguable that there was probable cause to arrest Plaintiff. Much of Defendants' argument rests on the

notion that any reasonable officer would believe that a failure to abide by a lawful order equals interference with a peace officer. As explained, the statute has required more than that since 2021, and a reasonable officer would know that. A reasonable officer would also know that a civil dispute does not give rise to probable cause. *Allen v. City of Portland*, 73 F.3d 232, 237 (1995). And that any order must be lawful. *Kreis*, 365 Or. at 667–68. Taking the facts in the light most favorable to Plaintiff, a jury could conclude there is no reasonable argument that there was probable cause to arrest for interference.

To the extent the arrest was predicated on the vehicle blocking traffic, the bodycam video points to someone other than Plaintiff having control over that vehicle. Corporal Ross reached a different conclusion based on his prior knowledge of Plaintiff. Corporal Ross would still be entitled to qualified immunity if any reasonable officer could believe based on the facts there was probable cause, even if there ultimately might not be. But to the extent Corporal Ross relies on his prior knowledge for his belief that Plaintiff controlled the vehicle, that is a fact dispute as to the accuracy of that knowledge which precludes qualified immunity at this stage.

***B. Excessive Force Claim***

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for excessive force because "there are no material facts or evidentiary [sic] which creates a genuine question as to whether Corporal Ross used excessive force." Defs.' Mot. 16. According to Defendants, the force used to effect Plaintiff's arrest was reasonable and "minimal under the circumstances." Defs.' Mot. 17.

The Fourth Amendment permits police to use "only such force as is objectively reasonable under the circumstances." *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000). The inquiry into "reasonableness" in an excessive force case "is an objective one: the

question is whether the officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397 (1989) (citations omitted).

In cases alleging excessive force, the objective reasonableness of an officer's actions is evaluated under the three-step excessive force test articulated in *Graham.* First, courts must assess "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (citations omitted). "Second, we evaluate the government's interest in the use of force." *Id.* "Finally, 'we balance the gravity of the intrusion on the individual against the government's need for that intrusion.'" *Id.*

**1. The Severity of the Intrusion**

The severity of the intrusion is evaluated by examining both "the type and amount of force inflicted." *Hart v. Benton Cnty. Sheriff's Off.*, 654 F. App'x 270, 273 (9th Cir. 2016) (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). Corporal Ross pushed Plaintiff into the U-Haul, shoved her onto the ground, and then pushed her face-first into the ground. Corporal Ross's use of force during Plaintiff's arrest resulted in Plaintiff sustaining cuts, bleeding, scratches, and bruises along the left side of her face and shoulder. *See* Pl.'s Resp., Ex 6. Due to the considerable degree of contact as well as the risk of resulting harm Corporal Ross's actions amounted to an intermediate use of force and a substantial intrusion upon Plaintiff's rights. *See Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (finding the officers' use of force substantial when they forcibly threw the plaintiff face-first to the pavement in a takedown maneuver); c*f. Williamson v. City of Nat'l City,* 23 F.4th 1146, 1152 (9th Cir. 2022) (finding the

officer's use of force minimal, in part because the officers did not throw the plaintiff to the ground, strike her, or use any compliance techniques for the purpose of inflicting pain on her).

**2. The Governmental Interests at Stake Weigh in Plaintiff's Favor**

The government's interests focus on the severity of the alleged crime, the threat to officer safety, and whether Plaintiff attempted to avoid arrest. The "'most important factor' under *Graham* is whether the suspect posed 'an immediate threat to the safety of the officers or others.'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)).

Plaintiff was charged with disorderly conduct and resisting arrest, but other crimes were alleged during her encounter with Corporal Ross.[2] Interfering with a peace officer is a Class A misdemeanor. ORS 162.247(2). Disorderly conduct is a Class B misdemeanor. ORS 166.025(2)(a). Resisting arrest is a Class A misdemeanor. ORS 162.315(4). Unauthorized use of a motor vehicle is a Class C felony. ORS 164.135(2). These crimes are moderately severe, but the facts and circumstances in this case do not support a finding that they were so severe to justify the use of significant force.

In terms of officer safety, Defendants do not address whether Plaintiff posed an immediate threat to officer safety. The body camera footage shows that Plaintiff, although clearly upset, was not threatening officers. Plaintiff was wearing thin fabric shorts and a tank top

[2] During Plaintiff's criminal trial, Corporal Ross testified that he "arrested Ms. Johnson because she was in possession of the vehicle that was no longer hers, as well as for interfering with the police officer, and then disorderly conduct for parking the vehicle in the roadway." Pl.'s Reply. During the encounter, Corporal Ross told Plaintiff he will arrest her for interfering, and she will "go to jail for UUMV." BODYCAM 1 12:50:09–12:50:15. However, Plaintiff was only charged with disorderly conduct and resisting arrest.

and had no weapons. Plaintiff was also alone and Corporal Ross had multiple officers aiding him in the arrest. There does not seem to be any basis for concluding that officer safety concerns justified the use of force.

In terms of resisting arrest, Plaintiff initially pulled back from Defendant when he attempted to place her in handcuffs. And she resisted allowing the officers to place her hands behind her back. However, once the handcuffs were securely in place, Plaintiff stopped resisting. Plaintiff also pulled away from Corporal Ross when he attempted to unzip and search her left pocket. However, Plaintiff did not attempt to flee the scene, nor did she attack the officers while they were applying the handcuffs. These actions do not amount to significant resistance. *Smith*, 394 F.3d at 703 (noting that a defendant's initial refusal to place both arms behind his back was not a significant act of resistance).

**3. Balancing Competing Interests**

After evaluating the intrusion on Plaintiff's rights and the government's interests in the use of force, courts must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Glenn*, 673 F.3d at 871 (quoting *Miller*, 340 F.3d at 964). In evaluating the reasonableness of the force used, courts must consider the events in question "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly." *Price v. City of Sutherlin*, 945 F. Supp. 2d 1147, 1155 (D. Or. 2013) (quoting *Smith*, 394 F.3d at 701) (citation modified).

A reasonable jury could find that the intrusion into Plaintiff's rights was severe, while the government's interest in that intrusion was minor. Plaintiff was subjected to substantial force; she was handcuffed and thrown to the ground, and she suffered injuries to her face and shoulder as a result. This occurred, according to Plaintiff, because she was in a contract dispute over a U-Haul rental. At worst, she was causing a disruption to vehicular traffic along what appears to be a low-traffic right of way. And Plaintiff posed no immediate threat to the officers or others. Plaintiff was alone, unarmed, and was not threatening officers. *See Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) (a "desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury.").

Balancing the severity of the intrusion upon Plaintiff's rights against the Defendants' need for that intrusion, a reasonable jury could find that the use of force exceeded the bounds of what would be permissible under the Fourth Amendment. Defendant's motion for summary judgment as to the excessive force claim is denied.

Plaintiff argues that summary judgment is appropriate on her excessive force claim because Corporal Ross used "force that was unreasonable and excessive under the circumstances." Pl.'s Mot. 14–15. However, because excessive force claims require a fact-intensive inquiry, summary judgment is not appropriate. *Price*, 945 F. Supp. 2d at 1155. Summary judgment is also denied as to Plaintiff's excessive force claim.

**4. Qualified Immunity Analysis for Excessive Force Claim**

Corporal Ross also argues he is entitled to qualified immunity on this claim. In considering whether he is entitled to qualified immunity, the operative question is whether Plaintiff's right to be free from being thrown face-first to the ground while handcuffed, and

without warning for a potential nonviolent crime was "clearly established" given the "context of the case." *Thomas,* 818 F.3d at 886. In situations where "there is no need for force, *any* force used is constitutionally unreasonable." *Gonzalez v. City of Phoenix*, 163 F.4th 1289, 1301 (9th Cir. 2026) (citing *Lolli v. Cnty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) (citations omitted); *see also Blankenhorn*, 485 F.3d at 481 ("[F]orce is only justified when there is a need for force"); *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) ("Where [government] interests do not support a need for force, any force used is constitutionally unreasonable." (citation modified)).

Plaintiff urges the Court to rely on three cases (*Blankenhorn*, *Young*, and *Rice*) as evidence that the law was clearly established. The Court agrees these cases are analogous and put Defendant on notice that his actions were unconstitutional.

In *Rice*, the court found qualified immunity did not apply because the right to be free from substantial force in the implementation of a takedown maneuver was clearly established. *Rice*, 989 F.3d 1112, 1125. Police in that case were confronted with a person who had committed a traffic violation and refused to get out of his car or provide identification. *Id.* at 1124. Police responded by forcibly throwing him to the ground, face-first onto the pavement. *Id.* at 1121. The court found that the suspect's actions constituted "passive resistance" and denied officers qualified immunity on an excessive force claim. *Id.* at 1124. "Long before Rice's arrest, we clearly established one's right to be free from the application of non-trivial force for engaging in mere passive resistance." *Id*. at 1125 (quoting *Gravelet-Blondin*, 728 F.3d at 1093 (citation modified)). The court emphasized that in the case of no resistance or only passive resistance, where a plaintiff has not made any threats to the officer, "the use of non-trivial force of any kind was unreasonable." *Id.* at 1126 (quoting *Gravelet-Blondin*, 728 F.3d at 1094 (citation modified)).

In *Blankenhorn*, the plaintiff was stopped for a relatively minor crime, did not pose an immediate threat to officer safety, and was not warned that force was imminent before he was tackled. *Blankenhorn*, 485 F.3d 463, 481. The court found qualified immunity did not apply because a reasonable jury could find the officers' tackling the plaintiff was unreasonable under the circumstances. *Id*. at 479. Like this case, the plaintiff in *Blankenhorn* was recorded on video struggling with the officers for a few moments before he was taken down. *Id*. However, the *Blankenhorn* court concluded that "[t]he lack of forewarning, the swiftness, and the violence with which the defendant officers threw themselves upon Blankenhorn could reasonably be considered 'provocative,' triggering Blankenhorn's limited right to reasonable resistance." *Id.* at 479–80.

In *Young*, the officers used intermediate force on a plaintiff who was pulled over for a minor seatbelt violation. *Young v. Cnty. of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011). While this case is not completely analogous, the holding in this case would have put a reasonable officer on notice that the use of intermediate force under these circumstances was excessive. The Court held that "[o]ur conclusion comports with the logical notion that it is rarely necessary, if ever, for a police officer to employ substantial force without warning against an individual who is suspected only of minor offenses, is not resisting arrest, and, most important, does not pose any apparent threat to officer or public safety. Indeed, we have found the use of pepper spray to be excessive in such circumstances even when a warning was provided." *Id.* at 1166–67.

Considering the relevant case law, a reasonable officer in Corporal Ross's position would know that using substantial force for a nonviolent, relatively minor violation, where there was no immediate threat to officer safety was unlawful. *Rice, Blankenhorn,* and *Young* placed the Defendants on notice that application of substantial force, without warning, by tackling a suspect

to the ground is unreasonable in the absence of a threat to safety or serious criminal activity. Here, taken in the light most favorable to Plaintiff, the facts do not support qualified immunity.

### *C. Malicious Prosecution Claim*

To prevail on a claim of malicious prosecution under § 1983, "a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Id*. (quoting *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002)).

In the Ninth Circuit, a claim for malicious prosecution under § 1983 is not cognizable "if process is available within the state judicial system to provide a remedy." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "However, 'an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights.'" *Id*. at 562 (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc)). Thus, in considering malicious prosecution claims brought under § 1983, the Court evaluates the claim under the state standards, and if Plaintiff's state law claim for malicious prosecution fails, so does the § 1983 claim. *Id*.

In Oregon, the elements for malicious prosecution are "(1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable

cause for the proceeding; and (6) injury or damage because of the prosecution." *Singh v. McLaughlin*, 255 Or. App. 340, 352, 297 P.3d 514, 522 (2013). "For purposes of a malicious prosecution claim, 'malice' is 'defined as any primary purpose other than to bring a person to justice.'" *Id.* at 353 (quoting *Ledford v. Gutoski*, 319 Or. 397, 404, 877 P.2d 80 (1994)).

Importantly, police officers "are not generally 'liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted.'" *Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1205 (D. Or. 2011), *aff'd,* 496 F. App'x 728 (9th Cir. 2012) (quoting *Blankenhorn*, 485 F.3d at 482). This presumption can be rebutted with evidence that an officer "improperly exerted pressure on the prosecutor, knowingly provided misinformation . . ., concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy,* 368 F.3d at 1067. Plaintiff has the burden of rebutting the presumption with such evidence. *Sloman v. Tadlock,* 21 F.3d 1462, 1474 (9th Cir. 1994).

The court agrees with Defendants that Plaintiff has failed to produce evidence of this nature. By all indications, Corporal Ross provided the Tillamook County District Attorney's Office with the bodycam video. This allowed the prosecutor to form their own independent judgment, based on most operative facts, as to probable cause and the decision to file charges. There were no misrepresentations in Corporal Ross's police reports which so contravened what was shown in the video that it would have had the likely effect of overcoming the prosecutor's independent judgment. Notably, it appears Plaintiff was not charged with interfering, a charge for which Corporal Ross stated he had probable cause to arrest Plaintiff. Ross Decl. ¶ 20. This is persuasive evidence that the criminal proceeding was not the result of the "insistence of the

defendant," but rather, an independent judgment by the prosecutor's office based on the evidence provided.

Plaintiff argues that her acquittal for the disorderly conduct and resisting arrest charges "confirm Defendants lacked probable cause from the outset." Pl.'s Mot. 3, ECF No. 55. This is an improper conclusion. Although the criminal matter ultimately terminated in Plaintiff's favor, it does not necessarily follow that there was an absence of probable cause. The quantum of proof needed to secure a criminal conviction is beyond a reasonable doubt, far higher than probable cause. Additionally, to the extent the acquittal and dismissal of the criminal matter resolves any issues, they aren't necessarily identical to the issues presented in the civil litigation.

The presence of probable cause for any offense isn't dispositive for the *Graham* excessive force factor test. And it is entirely plausible that the prosecutor decided to charge Plaintiff after finding probable cause for crimes based on her conduct *after* Corporal Ross initiated the arrest. The fact that the jury could not reach a verdict on the resisting arrest charge—where the burden of proof is beyond a reasonable doubt—is highly suggestive that the prosecutor did have at least some evidence to support this charge. This would not be a defense from civil liability for Corporal Ross on either the wrongful arrest or excessive force claim, but it would be an exercise of independent judgment by the prosecutor.

Because the Court finds the Plaintiff has failed to demonstrate a genuine dispute of material fact necessary to overcome the presumption of prosecutorial independent judgment, the court grants Defendants' motion for summary judgment on the malicious prosecution claim.

## III. Plaintiff's Fourteenth Amendment Due Process and Equal Protection Claims

Plaintiff alleges she was denied due process and equal protection when she was unlawfully detained, denied access to basic rights, and prohibited from attending her father's

funeral. Compl. ¶¶ 20–21. Plaintiff argues several theories of due process and equal protection violations, including that Defendants detained Plaintiff during a critical window, making it "impossible for her to protect her home and property," and that she was improperly detained for four days, causing her to "miss her father's military funeral." Pl.'s Mot. 17. Plaintiff argues her arrest and detention were "objectively unreasonable and conscious shocking [sic] given the minor nature of this suspected offense and the readily available exculpatory evidence." *Id.*

***A. Due Process Claims***

To establish a claim for a deprivation of the right to substantive due process under the Fourteenth Amendment, a plaintiff must show "a government deprivation of life, liberty, or property" and that the deprivation was the result of "conscience shocking behavior by the government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). To establish a claim for the deprivation of a right to procedural due process under the Fourteenth Amendment, a plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Some of Plaintiff's Due Process allegations are not overly clear in her Complaint. However, her motion for summary judgment and accompanying reply in support provide some clarity that she is alleging claims based in part on her being deprived of her property. Specifically, Plaintiff alleges that Corporal Ross effectively deprived her of her property interest in the U-Haul truck. Pl.'s Repl. 9–11. Plaintiff also seems to allege that Defendants' collective actions resulted in the destruction of her home and property.

While Plaintiff's claims as to the destruction of her home and property are too speculative, her property interests in the rental U-Haul are more cognizable. Arguably, Plaintiff

was entitled to some measure of due process before Corporal Ross intervened on Mr. Cole's behalf to assist with repossessing the rental truck.

The Ninth Circuit has addressed "[a]t what point have the police become so entangled in a private self-help remedy that they may be held to answer under Section 1983[.]" *Meyers v. Redwood City*, 400 F.3d 765, 771 (9th Cir. 2005). In *Harris v. City of Roseburg*, the Court concluded a "deprivation within the meaning of § 1983" may occur "not only when there has been an actual taking of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession." *Harris*, 664 F.2d at 1127. Accordingly, although "mere acquiescence by the police to 'stand by in case of trouble' is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action." *Id*.

Here, there can be little doubt that Corporal Ross intervened and aided Mr. Cole in taking the U-Haul from Plaintiff. Ross repeatedly instructed Plaintiff to let Mr. Cole take the U-Haul. Ross's own declaration and probable cause declaration further bears out the fact that he arrested Plaintiff because she refused to let Mr. Cole take the U-Haul. *See* Ross Decl. ¶ 19–20, Ex. 4.

Defendants argue that Corporal Ross's "presence at" and "commands to maintain order" did not constitute "taking a side" in the civil dispute. Defs.' Resp. to Pl.'s Supp. Br. 14, ECF No. 72. But in the very next sentence, Defendants argue that Corporal Ross was attempting to "civilly dispel the issue between Plaintiff and Mr. Cole." *Id.* This isn't a meaningful distinction.

Corporal Ross did more than simply stand by and ensure a private repossession was effectuated in an orderly manner; Corporal Ross used his authority to order Plaintiff to surrender the truck, by telling Plaintiff that Mr. Cole had the right to take the truck, by threatening Plaintiff

with arrest if she did not surrender the truck, and finally by arresting Plaintiff when she did not do as Corporal Ross commanded. And once Plaintiff was secured in the police vehicle, Corporal Ross ordered Plaintiff's associates to remove their personal property from the U-Haul so that Mr. Cole could retake possession of the vehicle.

Defendants' attempts to portray Corporal Ross as merely trying to maintain order are unconvincing and stand in stark contrast to his direct participation in the repossession. *See Stone Mach. Co. v. Kessler*, 1 Wash. App. 750, 463 P.2d 651 (1970) (applying Oregon law the court found a sheriff's actions in accompanying a creditor to repossess a tractor and telling the debtor that the creditor "had a right to repossess" the tractor amounted to direct participation in the repossession, thus rendering it illegal).

Corporal Ross was called to a dispute over a rental contract. And Defendants concede that "the contractual status of the U-Haul was genuinely disputed" when Corporal Ross arrived onsite. Defs.' Resp. to Pl.'s Supp. Br. 14. Although Defendants suggest that Corporal Ross was responding to a report of the crime, once he arrived, a question was certainly raised about whether a crime had occurred or if it was a civil dispute.

Even if Plaintiff was not listed on the rental agreement, this does not eliminate her property interest in the vehicle. In *Byrd v. United States,* the Supreme Court held that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Byrd v. United States*, 584 U.S. 395, 411 (2018). The Supreme Court based its reasoning in large part on such property interests, finding that a rental company's "lack of authorization alone" does not create a *per se* rule to defeat a person's property and privacy interests in that rental vehicle. *Id.* at 405. Further, in a civil dispute of this nature, "a debtor has a right to minimal due process (i.e., notice

and prior hearing) before a state may assist a secured creditor in repossessing the debtor's property." *Harris*, 664 F.2d at 1125. Indeed, Plaintiff has introduced some evidence that suggests she had paid for the U-Haul and had a valid agreement for its possession on August 2, 2024. Pl.'s Mot. 2; Receipts and Invoices from U-Haul, ECF Nos. 55-16, 55-17, 55-18.

Viewing all disputed facts in a light most favorable for Plaintiff as the nonmoving party, Defendants have not established that they prevail as a matter of law with respect to the deprivation of Plaintiff's property in the rented U-Haul truck. Summary judgment is denied as to the claim related to the U-Haul.

However, to the extent Plaintiff alleged additional theories of liability for deprivation of property which are based on losses that occurred at her home while she was in custody, Plaintiff has failed to show that Corporal Ross is responsible for those losses. Defendants are entitled to summary judgment on these claims.

***B. Equal Protection Claim***

"The Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.'" *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 992 (9th Cir. 2007) (quoting *Squaw Valley Dev. Co. v. Goldberg,* 375 F.3d 936, 944 (9th Cir.2004)). To prevail on an Equal Protection claim, a plaintiff must establish that the defendant "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)). "If the acts in question ***do not*** involve a suspect classification, a plaintiff can alternatively establish an equal protection 'class of one' claim by alleging that she "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Alexander v. City & Cnty. of Honolulu*, 545 F.

Supp. 2d 1122, 1131 (D. Haw. 2008) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (emphasis in original)).

Here, Plaintiff has failed to adequately plead an Equal Protection claim under either theory. She has not alleged she is a member of a protected class. Compl. ¶¶ 20–21. Nor has she alleged that Defendants treated her differently than others similarly situated. As a result, Defendants are entitled to summary judgment on Plaintiff's Equal Protection claim. *See Vill. of Willowbrook*, 528 U.S. at 564.

## IV. Plaintiff's State Tort Claims

Finally, Plaintiff brought three state-law tort claims against Corporal Ross: malicious prosecution, defamation, and intentional infliction of emotional distress. Defendants argue that they are entitled to summary judgment for all three claims.[3]

### *A. Malicious Prosecution Claim*

As discussed *supra*, Plaintiff's state law malicious prosecution does not survive summary judgment because the Court finds that the prosecution was the result of an independent judgment of the prosecutor rather than any misconduct on the part of Corporal Ross.

### *B. Defamation Claim*

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann v. Liles*, 358 Or. 706, 711, 369 P.3d 1117, 1121 (2016). "To be actionable, a communication must be both false and defamatory." *Reesman v. Highfill*, 327 Or. 597, 603, 965 P.2d 1030, 1034

---

[3] Defendants also argued that Corporal Ross is not a proper party, as Oregon state law mandates that the sole cause of action for a tort committed by a public employee (acting within the scope and course of their employment) is an action against a public body. Because the Court was able to dismiss each state-law tort claim on its merits, it does not address these procedural arguments.

(1998). A statement is defamatory if it "would subject the plaintiff to hatred, contempt or ridicule," if it tends to "diminish the esteem, respect, goodwill or confidence in which the plaintiff is held," or if the statement brings about "adverse, derogatory or unpleasant feelings or opinions against the plaintiff." *Neumann*, 358 Or. at 711 (citation modified).

Plaintiff alleges Corporal Ross "knowingly and intentionally made false statements in the police report, alleging actions and conduct by Plaintiff that were untrue." Compl. ¶ 25. Plaintiff alleges these statements were made with malice and were published to multiple third parties, including law enforcement officers and prosecutors. Compl. ¶ 26. Plaintiff's argument rests on Corporal Ross "falsely accusing [her] of criminal conduct" and "false accusations of drug use and frequenting known drug houses." Pl.'s Mot. 18.

Corporal Ross is entitled to summary judgment on Plaintiff's defamation claim. "Under Oregon law, "executive officers have an absolute privilege to publish defamatory material in the course of performing their executive duties." *Nash v. Lewis*, 365 F. App'x 48, 53 (9th Cir. 2010) (quoting *Fender v. City of Oregon City*, 811 F. Supp. 554, 558 (D. Or. 1993)). Plaintiff agrees that Corporal Ross wrote the alleged false and defamatory statements about Plaintiff in his police report. Compl. ¶ 25. "Preparation of a police report is an official duty of a police officer." *Nash,* 365 F. App'x at 53 (citing *Chamberlain v. City of Portland*, 184 Or. App. 487, 492–93, 56 P.3d 497, 499–500 (2002)).

***C. Intentional Infliction of Emotional Distress Claim***

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant intended to inflict severe emotional distress, the defendant's acts caused plaintiff's severe emotional distress, and the defendants acts were "an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841,

849 (1995) (citation omitted). The conduct at issue must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Christofferson v. Church of Scientology of Portland*, 57 Or. App. 203, 211 n.7, 644 P.2d 577 (1982).

"Although it is the role of the jury to determine the extent of social norms, in the context of an IIED claim, the court may be required to determine whether no reasonable jury could find the defendant's conduct to have exceeded all bounds of socially tolerable harm." *McManus v. Auchincloss*, 271 Or. App. 765, 781, 353 P.3d 17 (2015) (citing *Pakos v. Clark*, 253 Or 113, 132, 453 P.2d 682 (1969)).

Plaintiff cites the case of *McDonald v. Cty. of Sonoma,* a district court case from the Northern District of California, to argue as a matter of law that "extreme and outrageous conduct" includes the unlawful arrest and use of excessive force against a suspect." Pl.'s Reply 28 (citing *McDonald v. Cnty. of Sonoma*, 506 F. Supp. 3d 969, 987 (N.D. Cal. 2020)). Plaintiff appears to be asking the court to adopt a new rule that any meritorious § 1983 claim based on unlawful arrest and excessive force—constitutional torts based on objective reasonability tests under the Fourth Amendment—gives rise to a *per se* claim for intentional infliction of emotional distress under Oregon state law. The court is not aware of any binding authority for this proposition as a matter of law and declines to do so. Further, *McDonald* referred to California's intentional infliction of emotional distress tort, which can be proven with a mental state of recklessness. *McDonald,* 506 F. Supp. 3d at 987. In Oregon, the actor must "desire[] to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct." *McGanty,* 321 Or. at 550–51.

Finally, the Plaintiff has failed to put into the record any evidence, even circumstantial, which could support a finding that Corporal Ross had the purpose of intentionally inflicting emotional distress on Plaintiff, as required. Defendants are entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

## CONCLUSION

Plaintiff's motion for summary judgment (ECF No. 54) is denied. Defendants' motion for summary judgment (ECF No. 42) is granted in part and denied in part. Specifically:

Defendant TILLAMOOK COUNTY's motion for summary judgment on the *Monell* liability claim is GRANTED. Defendant TILLAMOOK COUNTY is dismissed as a party from the case.

Defendant CORPORAL CHASE ROSS's motion for summary judgment is GRANTED with respect to Plaintiff's Fourteenth Amendment equal protection claim, as well as claims for malicious prosecution, defamation, and intentional infliction of emotional distress.

Defendant CORPORAL CHASE ROSS'S motion for summary judgment is DENIED with respect to Plaintiff's Fourteenth Amendment deprivation of property claim, as well as claims for Fourth Amendment Unlawful Arrest and Excessive Force.

DATED this 30th day of September, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge